UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VENTURE GLOBAL GATOR EXPRESS, LLC | CIVIL ACTION |
| VERSUS | 20-2802 |
| LAND, ET AL. | SECTION: "J" (3) |

### ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgement Confirming Right to Condemn and for Preliminary Injunction for Immediate Possession of Property* **(Rec. Doc. 20)** filed by Plaintiff, a Supplemental Memo in Support by Plaintiff **(Rec. Doc. 35)**, an opposition by Defendant **(Rec. Doc. 26)**, and a Supplemental Memo in Opposition by Defendant **(Rec. Doc. 37)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Plaintiff Venture Global Gator Express, LLC's Motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

This action arises from a Notice and Complaint of Condemnation filed October 13, 2020 by Plaintiff Venture Global Gator Express ("Plaintiff" or "Gator Express") against Captain Zach's Myrtle Grove Properties ("Captain Zach's") and ESP Louisiana Opportunities ("ESP Louisiana"), both of whom have an interest in the property at issue ("Property"). (Rec. Doc. 1, at 1). Captain Zach's is the landowner and ESP Louisiana is the holder of an option to acquire certain rights in the property (collectively referred to as "Defendants"). *Id.* at 1–2. Plaintiff brings this action

pursuant to a Certificate of Public Convenience and Necessity issued to Plaintiff by the Federal Energy Regulatory Commission ("FERC"). (Rec. Doc. 3, at 2).

FERC authorized Plaintiff to build a pipeline system to transport natural gas from interconnections with existing interstate gas pipeline systems in Louisiana to a liquified natural gas export terminal. (Rec. Doc. 1, at 2). This Certificate was granted September 30, 2019. (Rec. Doc. 20, at 3). The route of the pipeline was approved by FERC and, pursuant to the FERC Certificate, Plaintiff must construct the pipeline across the route depicted. (Rec. Doc. 1, at 8). Plaintiff seeks the condemnation/expropriation of a permanent servitude as well as a temporary workspace across the Property. *Id.* at 3. On February 26, 2020, Plaintiff sent a demand letter to Captain Zach's seeking to acquire the servitude on and across Captain Zach's property. (Rec. Doc. 8-3, at 1). Plaintiff now brings this action because Plaintiff has not been able to come to an agreement with Defendants regarding the pipeline servitude authorized by FERC. (Rec. Doc. 1, at 6).

ESP Louisiana alleges that Plaintiff and Defendants have yet to come to a conventional agreement because Plaintiff fails to take into account ESP Louisiana's investment in the property. (Rec. Doc. 8, at 4). As background, a primary source of ESP Louisiana's revenue is the sale of mitigation credits by the United States Corps of Engineers, the United States Environmental Protection Agency, the United States Fish and Wildlife Service, and the Louisiana Department of Wildlife and Fisheries through Mitigation Banking Instruments, which establish success criteria, operational guidelines and sponsorship responsibilities for the use, operation,

protection, monitoring, and maintenance of the mitigation banks. *Id.* at 8. When developers and landowners begin a project that will impact wetlands, for example, they are required to purchase mitigation credits. *Id.*

ESP Louisiana and Captain Zach's perfected an option agreement ("Option") in May 2019, *id.* at 7, that was duly recorded in the Plaquemines Parish conveyance records on July 7, 2020, *id.* at 2. The option was for ESP Louisiana to acquire rights to the Property to restore it as required to qualify as a mitigation bank and thus obtain mitigation credits. *Id.* at 8. ESP Louisiana paid Captain Zach's $300,000 for the Option, *id,* and estimates its total losses are at least $1,920,000, *id.* at 10.

Captain Zach's alleges that its losses from Plaintiff's servitude include all lost revenues as the beneficiary under the Option. (Rec. Doc. 9, at 3). Moreover, Captain Zach's alleges that Plaintiff seeks more property than the pipeline servitude calls for because Plaintiff will require continued access to the pipeline to repair, maintain, and relocate it, and thus Plaintiff seeks unlimited rights to traverse Captain Zach's property. *Id.*

**PARTIAL SUMMARY JUDGMENT CONFIRMING RIGHT TO CONDEMN**

I. **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a

dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## II. DISCUSSION

Plaintiff seeks an order confirming that it has condemnation authority. (Rec. Doc. 20-7, at 1). Pursuant to the Natural Gas Act ("NGA"),

> [w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations,

4

> pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h). "The statute only requires that the party seeking to condemn be unable to acquire the property by contract or unable to agree on compensation to be paid for the property." *Kan. Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, Located in Section 6, Sw. Quarter, Twp. 32 S., Range 10 W., Cnty. of Barber, State of Kan.*, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002).

Here, Plaintiff contends that there are only two elements for a claim for condemnation: possession of a FERC Certificate and an inability to acquire the property rights by contract or agreement with the landowner. (Rec. Doc. 20-7, at 4). Defendants do not dispute Plaintiff's possession of a FERC Certificate. (Rec. Doc. 26, at 16). Defendants challenge (1) the characterization of a portion of the proposed servitude as "temporary" instead of "permanent" and (2) that Plaintiff negotiated in good faith. *Id.*

First, Defendants argue that the "Temporary Workspace Servitude" that Plaintiff proposes is, in fact, permanent because "[m]ost of the rights [Plaintiff] seeks involve the right to do things in the future which will necessarily require the future use of the 9.018 Temporary Workspace on an as-needed basis." (Rec. Doc. 26, at 18).[1]

---

[1] The right at any time to lay, construct, operate, inspect, test, maintain, repair, replace, substitute, upgrade, alter, mark, protect, and remove two (2) pipelines with a diameter not to exceed forty-four (44) inches in diameter and appurtenances, equipment and facilities, either above or below ground, useful or incidental to or for the operation, maintenance or protection thereof . . . . (Rec. Doc. 20-5, at 3).

5

Without taking a deep dive into Louisiana Property Law, specifically the law of servitudes, the Court notes two Code Articles: 744 and 745. First, "[t]he owner of the dominant estate has the right to make at his expense all the works that are necessary for the use and preservation of the servitude." La. Civ. Code. Art. 744. And second, "[t]he owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude." La. Civ. Code art. 745. Although these articles are subject to the written contract between the parties, these are the most basic rights of dominant estate holders under Louisiana servitude law. Here, Plaintiff's so-called "permanent rights" are simply a more specific recitation of their rights as the dominant estate holder. The "Temporary Workspace Servitude" is properly named and does not give Plaintiff permanent rights beyond those necessary to use and preserve the permanent servitude requested.

Second, Louisiana Revised Statute § 19:2 requires that "[p]rior to filing an expropriation suit, an expropriating authority shall attempt in good faith to reach an agreement as to compensation with the owner of the property sought . . . ," and ESP Louisiana's property interests, even though only an option to purchase, are protected because "the term 'property' means immovable property, including servitudes and other rights in or to immovable property." La. R.S. § 19:1. In expropriation suits, the good faith requirement "is met if there is evidence that the expropriating authority has made a bona fide effort to obtain the property by conventional agreement prior to filing suit." *Dixie Elec. Membership Corp. v. Watts*, 268 So. 2d 128, 131 (La. Ct. App.

6

1 Cir. 1972). "There is no requirement that negotiations be conducted to a conclusion, or that the condemnor increase the initial offer which it made for the property." *Dixie Pipeline Co. v. Barry*, 227 So. 2d 1, 5 (La. Ct. App. 3 Cir. 1969). Specifically, the court in *Dixie Pipeline Company v. Barry* found that the condemnor negotiated in good faith when it made a substantial monetary offer consistent with what the other landowners along the route of the proposed pipeline received. *Id.*

Here, based on Plaintiff's appraisal of the Property on December 31, 2019, the Property had a value of $495.00 per acre. (Rec. Doc. 20-4, at 33). Plaintiff's final offer letter to Defendant Captain Zach on February 26, 2020 offered him $11,300.00 per acre. (Rec. Doc. 20-5). The amount per acre that Plaintiff offered was nearly twenty-three times the amount the Property was worth based on the appraisal. However, Defendants argue that the Property has an increased value based on ESP Louisiana and Captain Zach's Option agreement for a planned wetland conservation servitude. (Rec. Doc. 26, at 16). Defendants contend that Plaintiff refused to negotiate with ESP Louisiana, which is a requirement before bringing an expropriation suit since ESP Louisiana is an owner of property.

The Court does not disagree that the Option may increase the appraised value of the Property. However, an unrecorded option has no effect on third persons. The Louisiana Public Records Doctrine states that the rights and obligations established by an option over an immovable are without effect as to third persons unless and until they are recorded in the conveyance records. *See* La. Civ. Code art. 3338. "Simply put, an instrument in writing affecting immovable property which is not recorded is null

7

and void except between the parties." *Phipps v. Schupp* 163 So. 3d 212, 227 (La. Ct. App. 4 Cir. 2015) (*quoting Climarex Energy Co. v. Mauboules*, 40 So. 3d 931, 943 (La. 2010)).  Neither actual nor constructive knowledge of the unrecorded instrument is material. *See, e.g. McDuffie v. Walker*, 51 So. 100 (1909); *Phillips v. Parker*, 483 So. 2d 972 (La. 1986). This is a very basic principle of Louisiana property law. "[A]ctual knowledge is not the equivalent of registry, which is absolutely required in order . . . to affect third persons." *Phillips*, 483 So. 2d at 975. "Thus, the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." *Id.* This is the essence of the public records doctrine: "recordation is an essential element for the effectiveness of a right." *Id.*

Here, Defendants argue that Plaintiff did not negotiate in good faith "[i]n spite of [Plainitff's] knowledge of ESP Louisiana's plans to restore the property . . . " and that Plaintiff "either neglected or refused to acknowledge the value of ESP Louisiana's interest in the property in its negotiations with Defendant landowner, Captain Zach's" (Rec. Doc. 26, at 15). However, Defendants' argument regarding negotiating in good faith is based entirely around Plaintiff's knowledge of ESP Louisiana and Captain Zach's Option agreement which was not actually recorded until July 7, 2020, (Rec. Doc. 8, at 2), about five months after Plaintiff sent an expropriation demand letter to Captain Zach's on February 26, 2020, (Rec. Doc. 8-3, at 1), and about ten months after Plaintiff's FERC Certificate was granted on September 30, 2019 (Rec. Doc. 20, at 3). Therefore, Plaintiff's actual knowledge of

ESP Louisiana's interest in the Property has no material effect on Plaintiff's negotiations with Defendant Captain Zach. Plaintiff was entitled to rely on the public records of Plaquemines Parish, in which the Option was nowhere to be found. Therefore, when Defendants entered into a contract in May 2019 with each other, (Rec. Doc. 8, at 7), Captain Zach's and ESP Louisiana were the only persons to whom the contract applied until it was eventually recorded in July 2020. Plaintiff negotiated in good faith with Defendant Captain Zach when Plaintiff made a bona fide effort to obtain the Property by conventional agreement prior to filing suit.

As a final note, courts have found that "the state procedure requirement" for expropriation has been superseded by the implementation of Federal Rule of Civil Procedure 71.1. *See, e.g., E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 344 F.3d 693 (7th Cir. 2003); *S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1374 (11th Cir. 1999). As the advisory notes to 71.1 state, the rule "affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain" and "supplants all statutes prescribing a different procedure." Fed. R. Civ. P. 71.1 advisory committee's notes. From that perspective, the above discussion of Louisiana's good faith negotiation requirement is unnecessary and extraneous.

Plaintiff seeks partial summary judgment, asking the Court to order that Gator Express has condemnation authority. The Court finds that no genuine issue of material fact exists. Plaintiff has a valid FERC Certificate, and Plaintiff attempted

bona fide negotiations with the party who had a recorded interest in the Property. The Court finds that Plaintiff met the prerequisites for filing an expropriation suit.

## PRELIMINARY INJUNCTION

### I. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). None of the four requirements has a fixed quantitative value. *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975). Therefore, in applying the four-part test, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.*

Further, the decision to grant or deny a preliminary injunction is discretionary with the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has

clearly carried the burden of persuasion on all four requirements." *Suehs*, 692 F.3d at 348.

Finally, "[f]ederal district courts throughout the country have held that if the standard for preliminary injunctive relief is satisfied in favor of granting the relief, a pipeline company with the authority of eminent domain under the Natural Gas Act prior to the trial on compensation, should be granted immediate access to property to be condemned to begin construction of a pipeline." *Fla. Gas Transmission Co. LLC v. 2.876 Acres of Land*, No. 4:18-CV-1162, 2018 WL 4103624, at *3 (S.D. Tex. June 20, 2018) (*citing E. Tenn. Natural Gas Co. v. Sage*, 361 F. 3d 808 (4th Cir. 2004)).

## II. DISCUSSION

Plaintiff relies on *East Tennessee Natural Gas Company v. Sage*, 361 F. 3d 808 (4th Cir. 2004), and its prodigy to support its argument that the Court should grant Plaintiff a preliminary injunction. Cases following *Sage* include district courts in the Fifth Circuit, although not yet the Fifth Circuit itself. *See, e.g.*, *TransCameron Pipeline, LLC v. Pipeline Servitude Across Parcel of Prop. Situated in Section 20, Twp. 14 S., Range 7 W., Cameron Par., La.*, No. 19-CV-0567, 2019 WL 3941297 (W.D. La. June 20, 2019). In contrast, Defendants rely on *Northern Border Pipeline Company v. 86.72 Acres of Land*, 144 F. 3d 469 (7th Cir. 1998). After an examination of both *Sage* and *Northern Border*, the Court finds *Sage* and its prodigy more persuasive. In *Northern Border*, the condemnor did "not contest the district court's conclusion that its claim to immediate possession has no basis in substantive federal or state law."

*Id*. at 471. This is in direct contrast to *Sage* and this case, in which Plaintiff has a claim to immediate possession.

First, as discussed above, the Court finds that Plaintiff does have a valid condemnation claim, and thus there is a likelihood of Plaintiff's success on the merits. Notably, Defendants do not address the first criteria.

Second, while generally, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough," *Columbia Gas Transmission, LLC v. 84.53 Acres of Land, More or Less, In Calhoun, Marshall, Ritchie, Tyler, & Wetzel Ctys., W. Va.*, 310 F. Supp. 3d 685, 693 (N.D.W. Va. 2018) (*citing Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017), this maxim is tied to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date." *Id*. Thus, the general rule that economic losses do not constitute irreparable harm "rests on the assumption that economic losses are recoverable." *N.C. Growers' Ass'n, Inc. v. Solis*, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009).

Here, Plaintiff contends that because the FERC Certificate requires completion by July 2023, access to the land after the trial, which is currently set for April 4, 2022, will cause irreparable harm. (Rec. Doc. 20-7, at 10). Although Defendants argue, correctly, that purely speculative and monetary losses are not typically considered irreparable harm for purposes of injunctive relief, (Rec. Doc. 26, at 12), Plaintiff, asserts more than just monetary losses. (Rec. Doc. 20-7, at 10–14). Plaintiff avers that public interest as well as Plaintiff's reputation faces irreparable

12

injury. *Id.* at 13–14. Additionally, Plaintiff does argue that it will suffer irreparable monetary harm. *Id.* at 13. Specifically, that several millions of dollars of expenditures for this pipeline would be lost. *Id.* While this loss is monetary in nature, it is not recoverable, which is key to a finding of irreparable harm. *Id.* "In a condemnation action, unlike other civil actions, a victorious plaintiff does not receive compensation for injuries suffered by delays in access to the property, nor is the Court aware of other actions to recover such damages." *In re Transcon. Gas Pipeline Co., LLC*, No. 1:16-CV-02991-ELR, 2016 WL 8861714, at *8 (N.D. Ga. Nov. 10, 2016), *aff'd sub nom. Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130 (11th Cir. 2018). Therefore, Plaintiff's alleged economic loss is irreparable because it is not recoverable.

Defendants additionally contend that Plaintiff's "apparent emergency need for access to the Subject Property now is a product of its own making," and encourages the Court to consider Plaintiff's bad faith negotiations and delay tactics. (Rec. Doc. 26, at 10). The court in *In re Transcontinental Gas Pipeline Company* addressed a similar issue: "[i]n-service deadlines are not simply agreed to as a matter of bilateral contract in this context. Such deadlines are driven by customers' seasonal gas and heating requirements and are a pre-requisite to final FERC approval given the requirement of 'open season' bidding periods for gas supply contracts." 2016 WL 8861714, at *9. As addressed above, Plaintiff complied with any good faith negotiation requirements as well.

13

Therefore, the Court finds that Plaintiff will suffer irreparable injury, not brought about of their own actions, if not granted immediate access.

Finally, the third and fourth criteria may be considered together. "In cases involving significant public interest, courts may consider the balance of the equities and the public interest factors together." *Colom. Gas Transmission, LLC*, 310 F. Supp. 3d at 695. As courts have pointed out, granting the pipeline company access immediately instead of after just compensation has been paid, results in the same impact on the landowner. *See, e.g. Sage*, 361 F.3d at 829. This is not an inherent harm that is irreparable; it "is an ordinary burden of citizenship." *Id.* Moreover, as the court in *Sage* reasoned:

> Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices. As the district court observed, FERC conducted a careful analysis of the . . . [p]roject and determined that the project will promote these congressional goals and serve the public interest.

*Id.* at 830.

Here, Defendants argue that their and Plaintiff's injuries are on equal grounds because both injuries are purely monetary in nature. (Rec. Doc. 26, at 12). In fact, Defendants assert their losses are greater because they claim a loss of $1,900,000. *Id.* Notably, Defendants do not address the fourth criteria. *Id.* at 9. In contrast, Plaintiff asserts that Defendants' monetary losses are negated by the fact that Plaintiff has deposited money into the registry of this Court for Defendants to draw upon. (Rec. Doc. 20-7, at 14–15). Plaintiff contends that Defendants may withdraw the funds without waiving any rights to argue at trial that just compensation should be higher.

*Id*. at 15. Finally, Plaintiff avers that both the Department of Energy and FERC have found that the pipeline will serve the public interest after extensive investigations and exhaustive studies. (Rec. Doc. 20-7, at 16). Plaintiff has, in fact, already deposited $4,750.00 into the registry of the court pursuant to this Court's Order. (Rec. Doc. 24). This number is twice that of the fair market value of the property based upon Plaintiff's appraisal. (Rec. Doc. 23). This money is available for Defendants to draw upon once this Order and Reasons are issued. Further, Defendants' withdrawal of this money does not waive their ability to argue at trial that this amount is not just compensation.

The Court finds the harm that would result to Plaintiff if the injunction is not issued outweighs the monetary interest of Defendants, and the pipeline does not disserve public interest based on the Department of Energy and FERC's findings.

Plaintiff seeks a preliminary injunction, asking the Court to order that Gator Express has the right to exercise possession of the Property and granting immediate access thereto. The Court finds Plaintiff has met the requirements for a preliminary injunction.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Venture Global Gator Express, LLC's partial summary judgment confirming its right to condemn the Property is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Venture Global Gator Express, LLC's motion for preliminary injunction is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff has a right of immediate possession of the Property and its interest therein sought in condemnation.

New Orleans, Louisiana, this 20th day of September, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE